FILED
SUPERIOR COURT
OF GUAM

2021 OCT -5 PM 1: 11

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| IN THE MATTER OF THE ESTATE<br><br>OF<br><br>BYONG H. KANG,<br><br>Deceased. | PROBATE CASE NO. PR0122-19<br><br><br>DECISION AND ORDER<br>(Motion to Quash; Motion to Compel;<br>Motion for Protective Order)<br>AND ORDER SETTING<br>SCHEDULING CONFERENCE |

This matter came before the Honorable Dana A. Gutierrez on July 6, 2021 for a Motion hearing on: 1) Petitioner Anthony Raymond Ulloa's ("Petitioner") Motion to Quash Subpoena for Production of Documents to Samonte Medical Clinic filed on November 5, 2020 ("Motion to Quash"); 2) Cross-Petitioner Jung Ye Kang's ("Cross-Petitioner") Motion to Compel Production of Documents filed on December 3, 2020 ("Motion to Compel"); and 3) Petitioner's Motion for Protective Order or to Quash Subpoena; Request to Take Judicial Notice filed on December 10, 2020 ("Motion for Protective Order").

Present via Zoom were Attorney Carlos L. Taitano and Attorney Georgette Concepcion representing Petitioner; Attorney Joyce C.H. Tang representing Cross-Petitioner; and Attorney Joshua D. Walsh representing heirs Suk Hook Paul Kang and Suk Jin Andrew Kang ("Paul and Andrew"). Upon a review of the applicable law, the arguments presented by the parties, and in consideration of the proceedings thus far, the Court hereby **GRANTS** Petitioner's Motion to Quash and **ADMONISHES** Cross-Petitioner; **DENIES** Cross-Petitioner's Motion to Compel; and **GRANTS IN PART** and **DENIES IN PART** Petitioner's Motion for Protective Order.

1

## PROCEDURAL BACKGROUND

This matter arises out of a Petition for Probate of Will and Letters Testamentary ("Ulloa's Petition") for the Estate of Byong H. Kang ("Decedent") filed by Petitioner on July 14, 2020. On September 9, 2020, before the hearing on Ulloa's Petition, the alleged surviving spouse of decedent, Jung Ye Kang ("Cross-Petitioner"), filed: 1) Objections to Petition for Admission of Will and Letters of Administration With the Will Annexed[1] ("Objection to Ulloa's Petition"); and 2) Verified Cross-Petition for Probate of Will & Letters of Administration With the Will Annexed ("Kang's Cross-Petition"). On October 1, 2020, Petitioner filed an Objection to Verified Cross-Petition for Probate of Will & Letters of Administration With Will Annexed ("Objection to Kang's Petition").

On November 4, 2020, Cross-Petitioner's counsel issued a Subpoena for Production of Documents addressed to the Samonte Medical Clinic (Dr. Romeo M. Samonte, M.D.), Custodian of Record ("Samonte Clinic") which commanded the Samonte Clinic to produce the requested documents by November 9, 2020. On November 5, 2020, the day after Cross-Petitioner served notice of the subpoena on Petitioner and the Samonte Clinic, Petitioner filed his Motion to Quash Subpoena and Objection or Memorandum of Points and Authorities in Support of Motion to Quash Subpoena for Production of Documents to Samonte Medical Clinic ("Motion to Quash").

After briefing on the Motion to Quash, Cross-Petitioner filed a Motion to Compel Production of Documents From Anthony Ulloa ("Motion to Compel") on December 3, 2020. On December 10, 2020, Petitioner filed a Motion for Protective Order or to Quash Subpoena; Request to Take Judicial Notice ("Motion for Protective Order"). On December 14, 2020, Petitioner filed his Opposition to Cross-Petitioner's Motion to Compel. On December 15, 2020, Cross-Petitioner filed her Opposition to Petitioner's Motion for Protective Order. Also on

---

[1] The Court notes that Cross-Petitioner titled her objection: "Objection to Petition for Admission of Will and Letters of Administration With Will Annexed." However, the Court understands this to be a clerical error, and presumes that Cross-Petitioner's objection is against Petitioner's "Petition for Probate of Will and Letters Testamentary."

December 15, 2020 Cross-Petitioner filed her Reply to Petitioner's Opposition to the Motion to Compel. On December 16, 2020, Petitioner filed his Reply to Cross-Petitioner's Opposition to the Motion for Protective Order.

On December 23, 2020, the judge previously assigned to this matter, the Honorable Anita A. Sukola, issued a Form One Disqualification Memorandum recusing herself from the case. The matter was assigned to this Court on December 29, 2020. On December 31, 2020, Petitioner filed a Restated or Supplemental Memorandum of Points and Authorities in Support of Opposition to Cross-Petitioner's Motion to Compel ("Restated Opposition"). On January 4, 2020, Petitioner filed an Ex Parte Motion to Shorten Time on Petitioner's Motion for Protective Order.

On January 12, 2021, the Court issued an Order Denying Ex Parte Motion to Shorten Time and for Further Briefing which ordered: 1) that the parties file a further briefing summarizing their position regarding the above-mentioned motions; 2) that any discovery acquired by Cross-Petitioner and Cross-Petitioner's counsels which is the subject of Petitioner's Motion to Quash filed on November 5, 2020 and Motion for Protective Order filed on December 10, 2020 be sequestered pursuant to Rule 45(d)(2)(B) of the Guam Rules of Civil Procedure ("GRCP") pending further order from the Court; and 3) that all discovery related to the Motion to Quash, the Motion to Compel and the Motion for Protective Order be stayed pending further order from the Court.

On January 14, 2021, Cross-Petitioner filed a Reply to Petitioner's Restated Opposition. Each party filed their Further Briefing by January 22, 2021. Upon a review of the voluminous filings, the Court scheduled a Motion Hearing for June 22, 2021 to address: 1) Petitioner's Motion to Quash; 2) Cross-Petitioner's Motion to Compel; and 3) Petitioner's Motion for Protective Order.

On June 18, 2021, Cross-Petitioner motioned the Court to continue the June 22, 2021

3

Motion hearing. The Court held a hearing on the Motion to Continue, and upon consideration of the pleadings and the arguments presented by the parties at the hearing, the Court granted the continuance and rescheduled the Motion hearing for July 6, 2021. After the parties presented their oral arguments on each of the three motions, the Court took the matters under advisement.

## DISCUSSION

The issues before the Court arise out of discovery disputes related to competing petitions to name a personal representative to administer Decedent's estate. Pursuant to 15 GCA § 3423 of Guam's Probate Code, "all issues of fact joined in probate proceedings must be tried in conformity with the rules of practice in civil actions." Accordingly, the Guam Rules of Civil Procedure and the Local Rules of the Superior Court of Guam are applicable in resolving the discovery disputes addressed by the Court herein.

### I. Motion to Quash.

In response to Cross-Petitioner's "Notice of Jung Ye Kang's Subpoena for Production of Documents to Samonte Medical Clinic (Dr. Romeo M. Samonte, M.D.)," Petitioner filed his Motion to Quash the subpoena for production of documents directed to the Samonte Clinic. In the Motion to Quash, Petitioner argues that according to the Decedent's Last Will and Testament, the Decedent "nominated and appointed" the Petitioner as the "executor" of the Decedent's estate, and the Petitioner has not waived any privilege of the Decedent. Mot. to Quash, at 1.

Petitioner asserts that the subpoena should be quashed on grounds of irrelevancy and pursuant to Rule 45(c)(3)(A)(ii) of the GRCP, which requires the quashing of a subpoena "if it requires disclosure of privileged or other protected matter and no exception or waiver applies." *Id.* at 1-4. Petitioner cites to Rule 504(f) of the Guam Rules of Evidence ("GRE") to argue that under Guam law, there is a "physician-patient privilege," without any "exception." *Id.* at 2. Lastly, Petitioner asserts that this "physician-patient privilege" survived the Decedent's death, and therefore the subpoena must be quashed as it seeks the disclosure of privileged medical

4

records. *Id.*

In Cross-Petitioner's Opposition to the Motion to Quash, Cross Petitioner asserts that the Motion to Quash should be denied for the following reasons: 1) the Motion to Quash is moot because the documents were produced by the Samonte Clinic and copies will be provided to opposing counsel; 2) Petitioner does not have standing to bring the Motion to Quash; 3) Petitioner's assertion of the physician-patient privilege does not apply because the right to assert and/or waive such privilege belongs to the executor, and Petitioner has not been named executor by the Court; and 4) the issue of a decedent's competency is always at issue in a probate case and thus the Decedent's medical condition is relevant to this probate matter. Opp. to Mot. to Quash, at 1-2.

### A.     The Motion to Quash Is Not Moot.

Cross-Petitioner asserts that the Motion to Quash is moot because the Samonte Clinic already produced the documents requested in the Subpoena. Opp. to Mot. to Quash, at 2. In response, Petitioner asserts the Motion to Quash is not moot because Rule 45 of the GRCP requires that "if information is produced in response to a subpoena that is subject to a claim of privilege," Cross-Petitioner (or her attorneys) are required to "automatically and promptly return, sequester, to destroy the specified information and any copies she (or her attorneys have) of the Decedent's medical records[.]" Reply to Opp. to Mot. to Quash, at 10 (internal quotations omitted).

Cross-Petitioner's argument for mootness was similarly raised in *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, 12-13 (1992). In *Church of Scientology*, the Internal Revenue Service ("IRS") served a summons on a state-court clerk seeking the production of tapes of conversations between Church officials and their attorneys. *Church of Scientology*, 506 U.S. at 11. The trial court ordered compliance with the summons and the tapes were provided to the IRS, but the Church appealed the trial court's order. *Id.* The Ninth Circuit dismissed the appeal holding that

because "the tapes have been turned over to the IRS . . . no controversy exists presently and this appeal is moot." *Id.* at 12.

The U.S. Supreme Court reversed the Ninth Circuit's dismissal holding that although the court "may not be able to return the parties to the *status quo ante*—there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes—a court can fashion *some* form of meaningful relief in circumstances such as these." *Id.* at 12-13. The Court reasoned that even where it may be too late to provide a "fully satisfactory remedy for the invasion of privacy that occurred," the Court still has "power to effectuate a partial remedy," and the "availability of this possible remedy is sufficient to prevent this case from being moot." *Compare id.* at 13, *with Veith v. Pennsylvania*, 67 Fed. Appx. 95, 97-99 (3d Cir. 2003) (where the Court distinguished the case from *Church of Scientology*, noting that the subpoenaed documents at issue did not fall under a protected privilege, such as the physician-patient privilege, so the motion to quash was moot).

Here, the case at bar is akin to the case in *Church of Scientology*. Petitioner's Motion to Quash seeks to require the Cross-Petitioner (and her attorneys) to destroy the medical records acquired from the Decedent's doctor's office based on Petitioner's assertion that no authorized representative has waived the Decedent's physician-patient privilege, and the physician-patient privilege survives the Decedent's death. Mot. to Quash, at 1-2; Reply to Opp. to Mot. to Quash, at 2-8. As noted in *Veith v. Pennsylvania*, certain privileges, such as the physician-patient privilege, implicate a privacy interest based on the purpose of such privilege, which is to prevent disclosures that could inhibit the development of socially desirable confidential relationships. *See Veith,* 67 Fed. Appx. at 99.

Because Decedent's privacy interest in his physician-patient privilege may have been violated by Cross-Petitioner's subpoena to the Samonte Clinic, the Clinic's production of the documents does not resolve the Motion because at least partial remedies may be available to

redress the allegations in Petitioner's Motion to Quash. *See id.* Therefore, the Court finds that

the availability of a possible remedy is sufficient to prevent this Motion to Quash from being

moot. *See Church of Scientology*, 506 U.S. at 14.

> **B.      Cross-Petitioner May Be Authorized to Waive Decedent's Physician-Patient Privilege In the Context of a "Will Contest" Proceeding.**

When faced with a will contest, Courts have found that "where both sides—the executor

on the one hand and the heirs or next of kin on the other—claim under and not adversely to the

decedent, the assumption should prevail that the decedent would desire that the validity of his or

her will should be determined in the fullest light of the facts," and therefore, "either the executor

or the contestants may effectively waive the [physician-patient] privilege without concurrence of

the other." Annot., 1 McCormick On Evidence § 102 (8th Ed.).

In *In re Wilson's Estate*, the District of Columbia Court of Appeals addressed this issue

where the decedent's will named his attorney as executor, and the will disinherited his

heirs-at-law, namely his estranged wife, daughters, and his granddaughter. *In re Wilson's Estate*,

416 A.2d 228, 229 (D.C. 1980) (hereinafter *"Wilson"*). The trial court prohibited evidence of the

decedent's medical records, holding that until letters testamentary have been issued, no one can

claim to be the "legal representative" of the decedent and therefore no one was authorized to

waive the decedent's physician-patient privilege. *Id.* at 230.[2] The Court of Appeals reversed the

trial court, holding that "where there is a conflict between the heirs-at-law and the executor,

either *eo nomine* or *de jure*, or where the heirs-at-law are on opposing sides of a will contest, any

single one of the heirs, or the executor, *eo nomine* or *de jure*, should be entitled to waive the

---

[2] Although *Wilson* did not explicitly deal with the issue of *discoverability* of such evidence, this Court finds that the issue of discoverability necessarily depends on resolving the issue of whether the physician-patient privilege may be waived by either litigant in this case. The issue of who may waive such privilege in the context of these cases was explicitly addressed in *Wilson* and the authorities cited to therein. Therefore, the Court considers the *Wilson* case and similar authorities on the issue of waiver to be instructive.

physician-patient privilege." *Id.* at 236.

Without addressing the issue of whether the Samonte Clinic properly complied with the subpoena to produce the decedent's medical records[3] or the issue of whether the evidence would ultimately be admissible as evidence,[4] the Motion to Quash requires the Court to decide whether this privilege may be waived for purposes of *discoverability*. In *Wilson* the Court reasoned:

> After the patient has died, it is of paramount importance that both his property interests, as well as his reputation and memory, be protected. In this regard, an heir should have the power to waive the [physician-patient] privilege[.] . . . The heirs are all interested in the protection of the estate and therefore are accorded the right of waiver upon the presumption that they would only consent to the waiver for the purpose of securing that end . . . Furthermore, it is almost universally conceded that all parties concerned need not unite before the privilege may be waived, and that any one of those entitled to waive the privilege may do so without the consent of the others.

*Id.* at 237 (citing 97 A.L.R.2d 393, 418, n.8 (1964)).

Lastly, Petitioner claims that any authority Cross-Petitioner may have ordinarily had to waive such a privilege has been revoked (or "disqualified") due to a "manifest conflict of interest" with the Decedent due to her disinheritance under the Will and their contentious divorce. Reply to Opp. to Mot. to Quash, at 6. However, this was similarly the factual scenario in *Wilson* where the purported heirs opposing the nomination of the named executor were both disinherited under the decedent's will and at least had an estranged relationship with the decedent. *E.g., id.* at 229, 234-35, n.13 (citing Annot., 97 A.L.R.2d 393 (1964)). These courts were similarly confronted with the issue of the heirs' potential conflict of interest, yet their

---

[3] Health care providers are frequently held to have an enforceable duty to invoke the privilege in the absence of waiver by the patient. 1 McCormick On Evidence § 102 (8th Ed.)(citing *St. Louis Little Rock Hosp., Inc. v. Gaertner*, 682 S.W.2d 146 (Mo. Ct. App. E.D. 1984) (failure of provider to assert privilege on behalf of patient in absence of waiver may give rise to action for damages); Cal. Evid. Code §§ 994, 995 (requiring the physician to claim the privilege unless otherwise instructed by the patient)). However, this issue is not before the Court.

[4] *See Church of Scientology*, 506 U.S. at 17; *Veith*, 67 Fed. Appx. at 99 (where the courts emphasized that in resolving the dispute regarding the discoverability of documents, the court is not faced with resolving any future potential disputes regarding the evidentiary use of the documents).

holdings nevertheless maintained that either the heirs *or* the named executor in the Will may waive the physician-patient privilege before the Court affirms the nomination of a personal representative for the estate. *See id.*

"Allowing one side the advantage of being able to choose to either introduce or withhold the physician's testimony would seriously call into question the validity of the outcome of the contest." *Id.* at 235. Accordingly, this Court finds that in a will contest, either the Petitioner, as the named executor in the purported Last Will and Testament of the Decedent, *or* the Cross-Petitioner, as the surviving spouse of the Decedent, are permitted to waive the Decedent's physician-patient privilege.

### C. Decedent's Medical Records Are Not Relevant, and Therefore Not Discoverable.

Notwithstanding this Court's finding that either Petitioner or Cross-Petitioner may be authorized to waive the Decedent's physician-patient privilege in the context of a "will contest," the scope of discovery is always limited to matters that are "relevant to the subject matter involved in the action." GRCP 26(b)(1).[5] *Wilson* and the authorities cited to therein held that either side of a *will contest* is permitted to waive the physician-patient privilege in light of the Court's duty to determine the "validity of the will." *Wilson*, 416 A.2d at 227-29 (citing 97 A.L.R.2d 393, 418, n.8 (1964)).[6] In other words, even assuming Cross-Petitioner may be authorized to waive the Decedent's physician-patient privilege, the waiver of an evidentiary privilege must have a relevant purpose. *People v. Garcia*, 111 Cal.Rptr.3d 435, 442 (Ct. App. 2010) (holding that even assuming waiver, such waiver is limited to only those matters "directly relevant" to the issues); *see Robert W. Baird & Co. Inc. v. Whitten*, 418 P.3d 894, 900 (Ariz. Ct. App. 2017) ("The touchstone for implied waiver is whether the protected information is

---

[5] *See People v. Orallo*, 2004 Guam 5 ¶ 20 (citing to Rule 26 of the GRCP and holding that where information was not relevant, it was not discoverable); *Piatt v. Goldsmith*, 940 F.2d 669, at *3 (9th Cir. 1991) (upholding the trial court's decision to limit discovery due to irrelevance of the materials sought).

[6] Additionally, this Court recognizes the existence of 6 GCA § 3102. However, like *Wilson* and the other authorities mentioned, this statute specifically applies to "will contests."

inherently relevant to the privilege-holder's theory of the case.").

By contrast to *Wilson*, the underlying controversy in this matter is not a "will contest." Although this Court is not yet faced with the decision of who shall be appointed as the executor or administrator of the Decedent's estate, both Petitioner and Cross-Petitioner's competing petitions seek to admit the same Last Will and Testament of Byong Kang to probate in this Court. *See* Ulloa's Petition, at 1-2, Exhibit B (July 14, 2020); Kang's Cross-Petition, at 1 (Exhibit B) ("Verified Cross-Petition for Probate of Will & Letters of Administration With the Will Annexed) (Sept. 9, 2020).

A careful review of Cross-Petitioner's Objection to Ulloa's Petition, her Cross-Petition, and Cross-Petitioner's Reply in Support of Jung Ye Kang's Verified Cross-Petition for Probate of Will, reveal that Cross-Petitioner has not contested the validity of the Decedent's Last Will and Testament. Rather, Cross-Petitioner seeks to challenge the *Petitioner's* competency to be appointed executor of the Decedent's estate. Mot. to Compel, at 1 (where Cross-Petitioner states that "[t]he main issues in this probate action include whether 1) the assets of the Estate (including Trust assets) are community property; and 2) whether Ulloa is competent to be appointed executor of Decedent's Will.").

A challenge to the competency of a *decedent* at the time his Will was executed is a separate issue from a challenge to the competency of a purported *executor* petitioning to be confirmed as the estate's personal representative. Absent any challenge to the validity of the Decedent's Will, the Court finds that the Decedent's medical records are irrelevant to the "subject matter involved" in the underlying controversy of this litigation. Additionally, this lack of relevance is compounded by the protections of the physician-patient privilege afforded to the Decedent pursuant to 6 GCA § 504, the existence of which the Cross-Petitioner does not dispute.[7]

---

[7] Cross-Petitioner cites to *Sims v. State* to support the proposition that only a confirmed personal representative may assert a decedent's physician-patient privilege. *Sims*, 311 S.E.2d 161 (Ga. 1984).

Therefore, the Court must quash the subpoena on the basis that the Decedent's medical records are not relevant because the issue of Decedent's competency has not been raised by either party.[8] Accordingly, the Court orders that Cross-Petitioner (and her attorneys) continue to sequester the Decedent's medical records and any copies they have, and may not use or disclose the information contained therein, until further order of the Court.

**D.     Cross-Petitioner Failed to Comply with the Prior Notice Requirement of GRCP Rule 45(b)(1).**

Lastly, Petitioner argues that his Motion to Quash should be granted for Cross-Petitioner's failure to comply with Rule 45(b)(1). Reply to Opp., to Mot. to Quash, at 8-10. Cross-Petitioner dismissed this argument by asserting that because the documents were produced, the Motion to Quash is moot. Min. Entry, at 9:45:52-9:48:15 AM (July 6, 2020).

**1.     The Service of the Subpoena Violated GRCP Rule 45(b)(1).**

GRCP Rule 45(b)(1) provides: "Prior notice of any commanded production of documents . . . before trial shall be served on each party in the manner prescribed by Rule 5(b)." Guam's current Rule 45(b)(1) is identical to the 1991 version of Rule 45(b)(1) of the Federal Rules of Civil Procedure ("FRCP"). When the 1991 version of FRCP Rule 45(b)(1) was enacted, the Advisory Committee wrote:

> A provision requiring service of prior notice pursuant to Rule 5 of compulsory pretrial production or inspection has been added to paragraph (b)(1). The purpose

---

However, both parties' reliance on *Sims* is misplaced because the issue of standing to assert the physician-patient privilege was not at issue in the case, and due to more recent, overriding case law interpreting *Sims*. *Id.* at 166, n. 7. A later case, *Cooksey v. Landry*, narrowed the reasoning in *Sims* by holding that in the absence of a waiver by the patient, material covered by the physician-patient privilege remains nearly absolutely privileged after a patient's death, regardless of who attempts to assert the privilege. *Advantage Behavioral Health Systems v. Cleveland*, 829 S.E.2d 763, 770, n. 7 (Ga. Ct. App. 2019) (citing *Cooksey v. Landry*, 761 S.E.2d 61, 64-65 (Ga. 2914)).

[8] Because the Court is granting Petitioner's Motion to Quash on the basis of irrelevance, and not on the basis of the Decedent's physician-patient privilege, the Court need not address the issue of whether Petitioner has standing to assert the privilege on Decedent's behalf. However, even if Petitioner lacked standing to assert the privilege, "it is undisputed that trial courts are authorized, indeed obligated, to regulate the use of subpoenas to obtain privileged third party discovery." *People v. Super. Ct.*, 182 P.3d 600, 610 (Cal. 2008).

of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things . . . [W]hen production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

Federal courts interpreting the 1991 version of FRCP Rule 45 hold that the rule requires notice of the subpoena to be served on opposing parties *prior* to *service* of the subpoena on the third party, not merely prior to the production date.[9] For example, in *Butler v. Biocore Medical Tech. Inc.*, the Tenth Circuit upheld the trial court's finding that the attorney's failure to serve notice of the subpoenas on opposing counsel prior to service of the subpoena on the third party constituted a violation of Rule 45(b)(1). *Butler*, 348 F.3d 1163, 1173-74 (10th Cir. 2003). Likewise, in *Firefighter's Inst. for Racial Equality ex rel Anderson v. City of St. Louis*, the Eight Circuit upheld the trial court's decision to quash two subpoenas where counsel served a subpoena on third parties before giving prior notice of the subpoenas to opposing counsel. *Ex rel Anderson*, 220 F.3d 898, 903 (2000).

As the Tenth Circuit held in *Butler*, the purpose of the notice requirement is to provide opposing parties an opportunity to object to the subpoena. *Butler*, 348 F.3d at 1173. In light of this purpose, "Rule 45(b)(1) requires notice to be given **prior to service of a subpoena.**" *Id.* (holding that notice of the subpoena ten days prior to the production date because the party did not serve notice of the subpoena prior to service on the third party) (citing *Seewald v. IIS Intelligent Information Sys., Ltd.*, No. 93-CV-4252, 1996 WL 612497, at *4-5 (E.D.N.Y. 1996)

---

[9] In 2007, Rule 45(b)(1) of the FRCP was amended to make this "prior notice" requirement even more clear and now reads: "If the subpoena commands the production of documents . . . before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). In the Advisory Committee Notes regarding the 2007 Amendment, the Committee writes:

> Former Rule 45(b)(1) required "prior notice" to each party of any commanded production of documents and things or inspection of premises. **Courts** have agreed that notice must be given "prior" to the return date, and **have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection. That interpretation is adopted in amended Rule 45(b)(1) to give clear notice of general present practice.**

(holding that notice of the subpoena even weeks prior to the production date violated Rule 45(b)(1) because the rule requires notice be given prior to serving the subpoena on the third party) (emphasis added).

In the case at bar, Petitioner argues that prior notice of the subpoena was not given because the notice of the subpoena was served on Petitioner on the same day that it was served on the Samonte Clinic, which was also the same day the documents were produced to Cross-Petitioner's counsel. Min. Entry, at 9:38:51-9:41:41 AM (July 6, 2020). Cross-Petitioner does not refute that she served notice of the subpoena on Petitioner on the same day the subpoena was served on the Samonte Clinic, making it effectively impossible for Petitioner's counsel to object prior to the production. Decl. of Dean A. Manglona in Support of Jung Ye Kang's Opp. to Anthony Ulloa's Mot. to Quash Subpoena to Samonte Medical Clinic (Nov. 6, 2020); Min. Entry, at 9:45:52-9:48:15 AM (July 6, 2020). By failing to provide notice of the subpoena to Petitioner, Cross-Petitioner's service of the notice did not comply with the prior notice requirements of Rule 45(b)(1).

This timeline of events—specifically, that the service of the notice of the subpoena on Petitioner, the service of the subpoena on the Samonte Clinic, and the production of the subpoenaed documents to Cross-Petitioner all occurred on the same day, November 4, 2020—reveals a violation of the prior notice requirements of Rule 45(b)(1).

### 2. The Appropriate Sanction for the Violation of GRCP Rule 45(b)(1) in This Case Is Admonishment.

Having found that Cross-Petitioner's counsels' conduct violated GRCP Rule 45(b)(1), the Court must now determine the appropriate remedy. A violation of Rule 45(b)(1) can warrant sanctions. *Mann v. Univ. of Cincinnati*, 114 F.3d 1188, at \*5 (6th Cir. 1997) (where the Court held that even though there is no federal physician-patient privilege, and therefore the opposing party could not have prevented the production of the medical records, the Court upheld the trial court's imposition of sanctions by prohibiting the use of the documents as evidence and ordering

13

attorney's fees for the counsel's violation of Rule 45).

General Rule ("GR") 2.1 of the Local Rules of the Superior Court of Guam provides:

The violation of or failure to conform to any of these General Rules, the Guam Rules of Civil Procedure, or the Local Rules of the Superior Court of Guam–Civil Rules shall subject the offending party or counsel to such penalties, including monetary sanctions and/or the imposition of costs and attorney's fees to opposing counsel, as the Court may deem appropriate under the circumstances.

Furthermore, although it should be used narrowly, a violation of the notice requirements of Rule 45 allows the Court "to fashion an equitable remedy." *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020-22 (9th Cir. 1994); *see Moylan*, 2018 Guam 8 ¶ 24; *Fleming v. Quigley*, 2003 Guam 4 ¶ 27 (noting that Courts have "'inherent equitable authority' to develop several exceptions to the American Rule" regarding attorney's fees). In Guam, the Court is authorized to award attorney's fees as a fee-shifting sanction in certain "equitable circumstances." *Matter of Guardianship of Moylan*, 2018 Guam 8 ¶ 11.

Regarding the appropriate "equitable remedy" for a violation of Rule 45, "[t]he subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused. Informing the person served of his right to object is a good start," and "[f]ighting a subpoena in court is not cheap[.]" *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004). Additionally, in consideration of: 1) the timeline admitted to by Cross-Petitioner—that the service of the notice of the subpoena on Petitioner, the service of the subpoena on the Samonte Clinic, and the production of the subpoenaed documents to Cross-Petitioner all occurred on the same day, November 4, 2020; 2) Cross-Petitioner's dismissive response to these events by simply asserting that the Motion to Quash is moot due to production of the documents; and 3) Cross-Petitioner's lack of any explanation as to why no prior notice was given, this Court finds that Cross-Petitioner's actions were not a "mistake," such that sanctions would be inappropriate. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989).

In light of these circumstances, pursuant to GR 2.1 and in an effort to deter such improper conduct, the Court would be within its authority to order that Cross-Petitioner and her attorneys pay Petitioner's attorney's fees for the costs associated with preparing and arguing the Motion to Quash. However, at this early stage of the proceedings, the Court finds that formal admonishment of Cross-Petitioner's (and her attorneys') conduct is a sufficient sanction for the above violation. The Court additionally warns Cross-Petitioner to strictly comply with the Civil Rules of Procedure and the Court's Local Rules, as future violations of the Civil Rules of Procedure or the Court's Local Rules may result in an award of attorney's fees to the Petitioner or other monetary sanctions.

## II. Motion to Compel.

Cross-Petitioner's Motion to Compel seeks the production of nine (9) categories of documents as follows:

1) all documents reflecting Petitioner's acceptance of his appointment as the successor trustee of the Byong H. Kang Trust;

2) all documents reflecting any communications or discussions relating in any way to the Kang Trust from May 1, 2014 until May 31, 2019, by and between Petitioner and a) Byong H. Kang, b) Sin Jae Kang, c) Suk Jin Andrew Kang, d) Suk Hoon Paul Kang, e) Jung Ye Kang, f) Carlos Taitano, and g) other third parties;

3) all documents reflecting any communications or discussions relating in any way to the Last Will & Testament of Byong H. Kang, from May 1, 2014 until May 31, 2019 between Petitioner and the persons listed above;

4) all documents relating in any way to the Kang Trust and Kang Will;

5) all documents reflecting all assets (including cash) held in trust under the Kang Trust, including but not limited to all bank and credit card statements;

6) all records, documents or other materials in your possession, custody or control not produced in response to requests No. 1 through 5, which pertain in any way to the Kang Trust or Kang Will;

7) all retainer fee agreements with any lawyer or consultant relating to the Trust, the Will, and this Probate Action;

8) all documents reflecting payments or transfer of any personal or real property from Byong Kang, the Trust, or any entity owned by him; and

9) all medical records and reports, relating to Byong Kang.

Decl. of Joyce C.H. Tang in Support of Mot. to Compel Production of Documents from Anthony Ulloa, at ¶ 2, Exhibit 1 (Dec. 3, 2020).

The grandsons of the Decedent and purported heirs to his estate, Suk Hoon Paul Kang and Suk Jin Andrew Kang (the "Heirs"), joined in support of Cross-Petitioner's Motion to Compel. Min. Entry, 9:58:00-10:00 a.m. (July 6, 2020). Through counsel, the Heirs explained that discovery would be useful because the Heirs do not know Petitioner and they are struggling to identify the assets of the Decedent's estate. *Id.*

In response to the Motion to Compel, Cross-Petitioner filed a: 1) Preliminary Memorandum of Points and Authorities in Support of Opposition to Cross-Petitioner's Motion to Compel Production of Documents on December 14, 2020 ("Preliminary Opposition to Motion to Compel"); and 2) a Restated or Supplemented Memorandum of Points and Authorities in Support of Opposition to Cross-Petitioner's Motion to Compel on December 31, 2020 ("Supplemental Opposition to Motion to Compel").

### A. The Court Will Not Consider the Supplemental Filings of the Parties.

Cross-Petitioner objects to the Petitioner's filings of a supplemental opposition and moves the Court to not consider it. Reply to Preliminary Opp., at 2-3. Petitioner explains that the reason for his staggered or supplemented briefing is due to a hearing scheduled for December 15, 2020 causing the briefing schedule to be "advanced." Preliminary Opp., at 2. In Cross-Petitioner's Reply to Petitioner's Preliminary Opposition, Cross-Petitioner asserts that the standard briefing schedule under Civil Rule ("CVR") 7.1 of the Local Rules of the Superior Court of Guam applies "unless ordered by the Court." Reply to Preliminary Opp., at 2 (Dec. 15, 2020). Cross-Petitioner further notes that at the December 3, 2020 hearing, the Court ordered the parties to complete their briefing on Cross-Petitioner's Motion to Compel before the hearing on the Motion to Compel which it set for December 15, 2020. *Id.*

Cross-Petitioner is correct that the default briefing schedule outlined in CVR 7.1(c)

applies "unless otherwise ordered by the court." CVR 7.1(a). Further, pursuant to CVR 7.1(k), the Court "need not consider motions, oppositions or briefs or memoranda that do not comply with [Rule 7.1.]"

Although this case was not assigned to this Court until weeks later, a review of the record from December 3, 2020 confirms that Judge Sukola ordered the parties to complete the briefing schedule before the December 15, 2020 hearing. Petitioner was present with counsel, Attorney Concepcion, at the December 3, 2020 hearing when the Court ordered the shortened briefing schedule. Nothing in the record indicates, and Petitioner does not allege, that Petitioner objected to the Court's orders. Min. Entry, 3:14-33-3:38:54 PM (Dec. 3, 2021).

While it is true that Cross-Petitioner did not file a written application to shorten time on the Motion to Compel, the Court nonetheless granted Cross-Petitioner's request to expedite the briefing. *Id.* Although the Court did not hear the Motion to Compel on December 15, 2020, the Petitioner did not request to supplement his briefings at that time, nor did the Court request it. Min. Entry, at 3:00:57-3:07-13 PM (Dec. 15, 2020).

Accordingly, pursuant to CVR 7.1(k) and for good cause, this Court will not consider Petitioner's Supplemental Opposition to Motion to Compel and the declarations filed in support thereof, filed on December 31, 2020. Because the Court will not consider the supplemental briefing, the Court additionally will not consider Cross-Petitioner's Reply in Support of Jung Ye Kang's Motion to Compel filed on January 14, 2021.

### B.    Cross-Petitioner Failed to Comply With CVR 37.1.

Petitioner argues that the Court should deny Cross-Petitioner's Motion to Compel based on Cross-Petitioner's Failure to Comply with CVR 37.1 of the Local Rules of Civil Procedure. Preliminary Opp., at 5-10. In response, Cross-Petitioner asserts that this argument is frivolous because she attached a "proposed stipulation" to her motion and Petitioner's refusal to sign the stipulation was "done in bad faith and for the purpose of delaying the filing" of the Motion to

17

Compel. Reply to Preliminary Opp., at 5.

CVR 37.1 provides:

a) Prior to the filing of any motion relating to a discovery dispute, counsel for the parties shall meet or attempt to meet in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel for the moving party to arrange for the conference which shall be held within a reasonable time.

(b) If counsel are unable to settle their differences, they shall formulate a written stipulation specifying separately and with particularity each issue that remains to be determined at the hearing. [ ... ]

(c) Briefing and oral argument of all discovery motions shall be scheduled pursuant to CVR 7.1.

(d) If the discovery disputes are found to be frivolous or based on counsel's failure to cooperate with each other in good faith, sanctions will be imposed at the discretion of the Court.

The parties appear to agree that they met and conferred, in accordance with CVR 37.1(a), on December 1, 2020. Notwithstanding their meeting, the Court notes that it is the moving party's responsibility to arrange for the meeting to be "held within a reasonable time." In this case, Cross-Petitioner wrote to Petitioner on November 30, 2020 at 9:03 a.m., asking for Petitioner's availability that same day between 11:00 a.m. and 2:00 p.m. Decl. of Joyce Tang in Support of Mot. to Compel, at ¶ 4, Exhibit 3 (Dec. 3, 2020). Petitioner responded that he could not be available that day, but offered to meet the next day, on December 1, 2020, to which Cross-Petitioner agreed. *Id.*

Two days after the conference, on December 3, 2020 at 7:59 a.m., Cross-Petitioner emailed Petitioner with a copy of her proposed stipulation regarding the discovery dispute and asked for his comments by 10:00 a.m. that day. *Id.*, at ¶ 6, Exhibit 6. At 9:24 a.m., Petitioner emailed his response informing Cross-Petitioner that he would need more time to review the drafted stipulation. *Id.* Further, Petitioner stated he would prepare revisions which would include "all of [his] client's objections or responses that are in issue including [his] client's contentions." *Id.* Finally, Petitioner stated he would return his revisions by no later than the

morning of December 4, 2020. *Id.* Rather than waiting less than a day to file an agreed upon stipulation, as required by CVR 37.1(b), Cross-Petitioner filed her Motion to Compel on December 3, 2020 at 12:46 p.m. *without* the required stipulation.

The Court emphasizes that a *proposed* stipulation defeats the purpose of CVR 37.1(b)'s requirement that when counsels are unable to settle their differences, "they shall formulate a written stipulation specifying separately and with particularity each issue that remains to be determined at the hearing." A review of Petitioner's December 3, 2020 emailed response to Cross-Petitioner's proposed stipulation reveals that had Cross-Petitioner waited for Petitioner's revisions, the parties likely could have prepared a stipulation compliant with the requirements of CVR 37.1(b).

Thus, Cross-Petitioner's Motion to Compel and attachments do not display sufficient assertions of fact which might satisfy the Court's local rules requiring that Cross-Petitioner attempt to resolve the dispute in good faith. While it is clear the parties disagree about the requested production of certain documents or information, it is not clear that Cross-Petitioner has made a good faith effort to comply with the CVR 37.1 and outline the respective positions of the parties in a *stipulated,* i.e. agreed upon, document. Furthermore, Cross-Petitioner offers no explanation for, and nothing in the record appears to justify, a reason why Cross-Petitioner had to file her Motion to Compel on December 3 and could not wait until Petitioner had a reasonable opportunity to provide revisions to the stipulation.

Such stipulation is not merely a formality, but rather is a critical document which is designed to both aid the parties in resolving their disputes, or at least narrowing the contested issues, and to assist the Court in understanding what issues remain.[10] By deliberately electing to not comply with this requirement, especially in the face of Petitioner's express desire to form a

---

[10] *E.g., Doane v. Kmart Corp.*, CV0188-14, Decision & Order ("D&O") at 4-6 (Jan. 22, 2015); *Korasan, LLC v. Paul's Guam, Inc., et al.*, CV0755-17, D&O, at 4 (Jan. 3, 2019); *Chamorro Equities, Inc., v. Vivian McCurdy, et al.*, CV0408-13, D&O, at 13-15 (Jan. 13, 2015).

stipulation in good faith, Cross-Petitioner failed to meet its obligation to resolve this discovery dispute prior to involving the Court. Absent the required stipulation, the Court must deny Cross-Petitioner's Motion to Compel.[11]

### III. Motion for Protective Order.

Although the Court finds the specific requests and positions of Petitioner in his Motion for Protective Order to be somewhat unclear, the Court is able to identify the following requests and/or positions: 1) only Petitioner qualifies to be the executor of the Decedent's Will and to administer his estate; 2) a protective order should be issued prohibiting Cross-Petitioner and her attorneys from conducting further discovery and ordering them to return all of the Decedent's confidential or proprietary information that has been discovered thus far; and 3) the deposition subpoena for Petitioner should be quashed. *See* Mot. for Protective Order, 2-19.

In response, Cross-Petitioner asserts that: 1) Petitioner improperly uses his Motion for Protective Order to discuss who is entitled to be executor of the Estate; 2) the documents that Petitioner seeks to be returned are not "confidential nor proprietary"; and 3) Cross-Petitioner properly noticed Petitioner's deposition, so his motion should be denied. *See* Opp. to Mot. for Protective Order (Dec. 15, 2020).

### A. At This Time, the Issue Before the Court Is Not Who Is Entitled to Be the Personal Representative of the Estate.

The Court partially agrees with Cross-Petitioner that the assertions on pages 2 through 6 of Petitioner's Motion for Protective Order are not appropriate to include in a request for a discovery protective order. Petitioner requests that the Court take judicial notice of several ongoing litigations in order to support Petitioner's argument that he is the only person qualified to be appointed as the personal representative of Decedent's estate. Mot. for Protective Order,

---

[11] The Court notes that a review of Cross-Petitioner's subpoena indicates that at least some of the requests appear generally relevant, within the reasonable limits of Petitioner's control or possession, to the issue of whether Petitioner is competent to serve as the executor of Decedent's estate and would likely be discoverable.

2-6.

While it "is proper to take judicial notice of court files," the Court can only take judicial notice of "the *truth of facts* in certain documents, including past court orders, findings of fact and conclusions of law, and judgments." *In re N.A.*, 2001 Guam 7 ¶ 58. Regarding all other submissions on file, "a court should only take judicial notice of the fact of their existence, and not the truth of the facts within." *Id.*

The Court is aware of the ongoing litigations cited to by Petitioner in his Motion for Protective Order. Petitioner cites to these cases in order to support his assertion that everyone aside from himself must be disqualified from serving as the personal representative of the Decedent's estate. Mot. for Protective Order, at 2-6. However, at this time, the issue before the Court is not who is or is not qualified (or disqualified) from serving as the estate's personal representative. Rather, at this stage, the broad issue before the Court is the scope of discovery that should be permitted to Cross-Petitioner, the decedent's purported surviving spouse, as a litigant contesting the competency of Petitioner to serve as the personal representative of the Decedent's estate.

Pursuant to Rule 12(f) of the GRCP, "upon the court's own initiative at any time, the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Although the Court does not elect to formally "strike" pages 2 through 6 of Petitioner's Motion for Protective Order, the Court does find the assertions raised in those pages to be immaterial and impertinent to the issues currently before the Court. Accordingly, because the issue of who to name as executor is not yet before the Court and because the Court cannot take "judicial notice" of the truth of any facts alleged in the ongoing cases cited to by Petitioner, the Court will not address the assertions made in pages 2 through 6 of Petitioner's Motion for Protective Order.

### B. The Cross-Petitioner Is Entitled to Conduct Discovery.

Petitioner requests a blanket order from the Court requiring Cross-Petitioner to cease and desist all further discovery involving the Decedent's estate and to return all of the Decedent's privileged, confidential, proprietary, or other files, records, documents, or information. *See* Proposed Order for Sequestration and Return of Decedent's Records (Dec. 10, 2020). The issues brought before the Court in Petitioner's Motion for Protective Order are limited due to Petitioner's overly broad and vague requests and because the only specific document or information identified by Petitioner is the Notice of Undisclosed Cash Assets of the Estate and Request for Accounting filed by Cross-Petitioner on December 3, 2020.

### 1. A Blanket Protective Order Prohibiting Discovery Is Not Warranted.

The Court is unable to grant Petitioner's request for a blanket protective order prohibiting Cross-Petitioner from conducting discovery in this matter. First, GRCP Rule 26(c), which governs protective orders in the context of discovery, provides that "for good cause shown," the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Here, the broad, generalized requests of Petitioner in his Motion for Protective Order prohibit the Court from being able to make a determination as to whether "good cause" exists to issue a protective order requiring Cross-Petitioner to stop all discovery and return all "confidential or proprietary" information. *See* Mot. for Protective Order, at 16.

Second, although not explicitly addressed by the Guam Supreme Court, the discovery procedures found in the Rules of Civil Procedure are available for use in probate proceedings. *See* 15 GCA § 3423; *e.g., Mota v. Super. Ct.*, 67 Cal.Rptr.3d 303, 355 (Ct. App. 2007); *Morris Stulsaft Foundation v. Super. Ct.*, 54 Cal.Rptr. 12, 16 (Ct. App. 1966) (where the contestants challenged the decedent's will and sought an order from the court compelling the deposition of

the will's subscribing witness); *Forthmann v. Boyer*, 118 Cal.Rptr.2d. 715, 722 (Ct. App. 2002).[12]

"As a result, parties to probate proceedings 'are entitled to conduct discovery--e.g., depositions, interrogatories, requests for admissions, etc.'" *Mota*, 67 Cal.Rptr.3d at 355 (holding that the contesting heir is entitled to conduct discovery when she objected to the final accounting of the estate); *but see Voigt v. Super. Ct.*, 304 P.2d 135, 136 (Cal. Ct. App. 1956) (holding that where the brother of the decedent and the widow filed competing petitions for letters of administration, but neither petition raised the issue of competency of the other petitioner, the brother was not entitled to take the deposition of the widow for the purpose of determining her competency).

Rule 26(b) of the GRCP provides:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

In the context of probate contests, "matters sought are properly discoverable if they will aid in a party's preparation" for the petition hearing. *Forthmann*, 118 Cal.Rptr.2d. at 723 (where an interested party sought discovery to identify the assets of the estate when it did not agree with the personal representative's final accounting). Because all issues and arguments that will come to light often cannot be ascertained at the time when discovery is sought, "courts may appropriately give an applicant substantial leeway," especially when the precise issues of the litigation and the legal standards governing those issues are not clearly established. *Id.* Furthermore, "where discovery is sought as to a non-privileged matter which is directly relevant

---

[12] Because the Guam Legislature enacted a probate code substantially similar to the California Probate Code, the Court looks to California case law for interpretation. *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 17.

to the issues before the court, there is no room for the exercise of discretion, for the party seeking to discover is entitled to it as a matter of right." *Morris Stulsaft Foundation*, 54 Cal.Rptr. at 17.

The controversy at issue in this litigation arises out of Cross-Petitioner's challenge to Petitioner's competency to serve as the executor of the Decedent's estate. Pursuant to 15 GCA § 1701(c)(5), no person is competent to serve as an executor who "is adjudged by the Superior Court of Guam incompetent to execute the duties of the trust by reason of . . . improvidence, or want of understanding or integrity." Therefore, non-privileged documents or information that may aid Cross-Petitioner in determining whether *Petitioner* may be incompetent to serve as the executor are clearly discoverable. Accordingly, the Court must deny Petitioner's request to issue a blanket order requiring Cross-Petitioner to cease and desist all further discovery involving the Decedent's estate.

> **2.    The Documents and Information Attached to the Notice of Undisclosed Cash Assets of the Estate and Request for Accounting Are Not Confidential.**

On December 3, 2020, Cross-Petitioner filed a Notice of Undisclosed Cash Assets of the Estate and Request for Accounting ("Notice of Assets"). Attached to the Notice of Assets are: 1) a receipt from "Chris Kang, on behalf of Byong Hi Kang" for a cash amount of $30,000 "on January 22, 2016 for replenishment of the Advance Retainer in *Kang v. Guam Constr. Co., Inc.*, Superior Court of Guam Civil Case No. CV0602-13" signed by Carlos L. Taitano ("Exhibit A"); 2) a copy of a check purportedly signed by Byong Hi Kang on January 1, 23, 2019, paid to the order of Brooks Concepcion Law, PC in the amount of $10,000.00 as a "retainer fee," and a copy of the receipt of the check by Brooks Concepcion Law, PC ("Exhibit B"); and 3) a copy of a second check purportedly signed by Byong Hi Kang on March 20, 2019, paid to the order of Brooks Concepcion Law, PC in the amount of $10,000.00 as a "retainer fee." In Petitioner's Motion for Protective Order, Petitioner alleges that these documents contain "confidential" and "proprietary" information and therefore Cross-Petitioner should be ordered to return all copies of

such documents. Mot. for Protective Order, at 13-17.[13]

The party asserting that an evidentiary privilege protects the disclosure of information sought through discovery has the burden to demonstrate that the privilege applies to the information in question. *See Tornay v. U.S.*, 840 F.2d 1424, 1426 (9th Cir. 1988). The Ninth Circuit has repeatedly held that fee information between an attorney and his client is generally not privileged. *Id.* (holding that the clients may be compelled to testify about the amount, date and form of attorneys' fees paid). "Payment of fees is incidental to the attorney-client relationship, and does not usually involve disclosure of confidential communications arising from the professional relationship." *Id.* In *Tornay*, the Ninth Circuit held that there is sometimes a narrow exception to this rule limited to "exceptional circumstances" where "disclosure of the client's identity" would reveal "information that is tantamount to a confidential professional communication." *Id.* at 1427.

Here, Petitioner has not offered any facts to support a finding that the documents or information contained in Cross-Petitioner's Notice of Assets would fall within the narrow exception described in *Tornay*. *See* Mot. for Protective Order; Reply to Opp. to Mot. for Protective Order. Additionally, Petitioner's briefs do not contain any case law revealing whether any other exceptions to this rule may exist or apply. *Id.*

Accordingly, this Court must deny Petitioner's request to issue an order requiring Cross-Petitioner return and destroy all copies of the documents or information contained in the Notice of Assets. The Court is unable to further address Petitioner's broad request that the Court order Cross-Petitioner to return and destroy all privileged or confidential information discovered thus far without more specificity from Petitioner identifying what that may be.[14]

---

[13] The Court will not address the Cross-Petitioner's "requests" in the Notice of Assets, as a "Notice" is not the proper way to bring a request before the Court. *See* GRCP 7(b); CVR 7.1.

[14] If there are other specific documents or information that Cross-Petitioner seeks to discover which Petitioner believes are protected by an evidentiary privilege, Petitioner should utilize a privilege log as authorized by Rule 26(b)(5) of the GRCP.

### C. The Request to Quash the Petitioner's Deposition Subpoena Is Granted.

Lastly, Petitioner requests that the Court issue a Protective Order quashing Cross-Petitioner's subpoena to depose Petitioner, Anthony Raymond Ulloa ("Deposition Subpoena"). Petitioner asserts that Cross-Petitioner did not in good faith comply with the requirements of Rule 26 of the GRCP and its accompanying local rules and that the subpoena merely serves to annoy, embarrass, oppress, or unduly burden Petitioner and his attorneys. Mot. for Protective Order, at 17-18. In response, Cross-Petitioner argues that she did attempt to arrange an agreed upon deposition time pursuant to CVR 26, but that Petitioner's only response was that Cross-Petitioner's proposed dates were unacceptable. Opp. to Mot. for Protective Order, at 4.

Rule 30(b)(1) of the GRCP requires that "a party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." Further, CVR 26.2 of the Local Rules of the Superior Court provides:

> (c) Lawyers shall, when practical, consult with opposing counsel before scheduling hearings and depositions, in a good faith attempt to avoid scheduling conflicts.
> (d) When scheduling hearings and depositions, lawyers shall communicate with opposing counsel in an attempt to schedule them at a mutually agreeable time.

A determination of whether reasonable notice of a deposition was given pursuant to Rule 30(b)(1) is a fact-specific inquiry given the circumstances and posture of the particular case. *E.g., In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005); *U.S. v. Philip Morris, Inc.*, 312 F. Supp. 2d 27, 36-37 (D.D.C. 2004); *Paul v. Winco Holdings, Inc.*, 249 F.R.D. 643, 656 (D. Idaho 2008).[15] Commonly, courts find that at least five business days' notice is required to constitute reasonable notice. *See, e.g., Paige v. Commissioner*, 248 F.R.D. 272, 275 (C.D. Cal. 2008) (finding that fourteen days' notice was reasonable); *Jones v. U.S.*, 720 F. Supp.

---

[15] These cases analyzed the meaning of Rule 30(b)(1) of the FRCP, which is substantively identical to Rule 30(b)(1) of the GRCP.

355, 366 (S.D.N.Y. 1989) (holding that eight days' notice was reasonable); *Vardon Gold Co., Inc. v. Supremem Gold Sales, Inc.*, No. 89-CV–2654, 1989 WL 153335, *1–2 (N.D. Ill., Nov. 2, 1989) (four days' notice was unreasonable). However, even ten business days' notice may sometimes be unreasonable where the case is "exceedingly complex" and the party serving the subpoena is "keenly aware" of other ongoing "discovery disputes." *Sulfuric Acid*, 231 F.R.D. at 327-28.

In this case, Cross-Petitioner served the Deposition Subpoena on Petitioner on December 4, 2020, less than five (5) business days prior to the scheduled deposition date (December 10, 2020). Decl. of Georgette Concepcion, at ¶ 8-9, Exhibit F-G (Dec. 10, 2020). Counsels met and conferred on December 9, 2020 by telephone, and Petitioner's counsel, Attorney Concepcion informed Cross-Petitioner's counsel that she was not available for the deposition on December 10, 2020. Decl. of Joyce Tang, at ¶ 4, Exhibit 3 (Dec. 15, 2020). In response, Cross-Petitioner's counsel offered December 11 (Friday), December 12 (Saturday), or December 14 (Monday). When the parties could not agree on a deposition date, Petitioner filed the present Motion for Protective Order requesting that the Court quash the Deposition Subpoena.

Despite Cross-Petitioner's contention that she is not required to obtain opposing counsel's consent in scheduling the deposition, CVR 26.2 in fact does require that when scheduling depositions, "lawyers **shall** communicate with opposing counsel in an attempt to schedule them at a mutually agreeable time." Both counsels' declarations indicate that Cross-Petitioner's counsel did not attempt to communicate with Petitioner's counsel regarding the deposition date prior to serving the Deposition Subpoena which scheduled the deposition for December 10, 2020. Decl. of Georgette Concepcion, at ¶ 8-9, Exhibit F-G (Dec. 10, 2020); Decl. of Joyce Tang, at ¶ 4, Exhibit 3 (Dec. 15, 2020).

The posture of this case at the time Cross-Petitioner served her Deposition Subpoena on Petitioner was contentious and multiple discovery disputes were already ongoing. Thus, in the

circumstances of this case, the Court finds that less than five days' notice of the deposition date is unreasonable, especially in light of Cross-Petitioner's failure to comply with CVR 26.2(d). Accordingly, the Court must quash the Deposition Subpoena served on Petitioner on December 4, 2020.

Notwithstanding the Court's decision to quash the Deposition Subpoena, the Court reiterates its earlier finding that non-privileged documents or information that may aid Cross-Petitioner in determining whether Petitioner may be incompetent to serve as the executor are discoverable. Further, Cross-Petitioner is entitled to depose Petitioner, if the information sought is relevant or will reasonably lead to the discovery of relevant material. *See* GRCP 26(b); *Compare Mota*, 67 Cal.Rptr.3d at 355, *with Voigt v. Super. Ct.*, 304 P.2d at 136. Therefore, as the Court denied Petitioner's request for a protective order, this decision shall not preclude Cross-Petitioner from reissuing any lawful subpoenas and serving them in accordance with the Guam Civil Rules of Procedure and the Court's local rules, including providing reasonable notice and communicating with opposing counsel to attempt to schedule an agreed upon date.

## CONCLUSION

Based upon the foregoing reasons and in light of the applicable law, the Court hereby **ORDERS** that:

1. Petitioner's Motion to Quash is **GRANTED**, and Cross-Petitioner is **ORDERED** to continue to sequester the Decedent's medical records and any copies it has, and may not use or disclose the information contained therein, until further order of the Court;

2. Cross-Petitioner is **ADMONISHED** for the violation of Rule 45(b)(1). The Court admonishes Cross-Petitioner to comply with the Civil Rules of Procedure and the Court's Local Rules, as future violations of the Civil Rules of Procedure or the Court's Local Rules may result in further sanctions;

3. Cross-Petitioner's Motion to Compel is **DENIED**;

4.    Petitioner's Motion for Protective Order is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.    The Court **denies** Petitioner's request for a blanket protective order and **denies** Petitioner's request to order that Cross-Petitioner return or destroy the information contained in Cross-Petitioner's Notice of Assets. However, the Court's denial of these requests shall not preclude Petitioner from seeking such relief in the future, if warranted under the circumstances and in accordance with the rules;

b.    The Court **grants** Petitioner's request to quash Cross-Petitioner's subpoena to depose Petitioner based on Cross-Petitioner's failure to comply with Civil Rules of Procedure and the Court's local rules. However, the Court's decision to quash the subpoena shall not preclude Cross-Petitioner from conducting future discovery in accordance with such rules; and

5.    All counsels of record who have entered an appearance in the above-captioned matter shall meet and confer for the purpose of preparing a joint proposed Scheduling Order and Discovery Plan pursuant to CVR 16.1. The proposed Scheduling Order shall be filed by **October 29, 2021**. A Scheduling Conference shall be held remotely on **November 8, 2021 at 9:00 a.m.**

0 5 OCT 2021

**SO ORDERED**: _____.

_____
**HONORABLE DANA A. GUTIERREZ**
**Judge, Superior Court of Guam**

To appear, go to: https://guamcourts-org.zoom.us; enter the Meeting ID: 839 7874 0380 and Passcode: 189701; or you may call into the courtroom at 671-475-3207.